1
2
3
4
5

JL

6  **IN THE UNITED STATES DISTRICT COURT**

7   **FOR THE DISTRICT OF ARIZONA**

8

9 Shawn Charles Goff,     No. CV 20-01288-PHX-DLR (JFM)

10     Plaintiff,

11 v.          **ORDER**

12 Trinity Food Service, et al.,

13     Defendants.

14

15   Plaintiff Shawn Charles Goff, who is confined in the Arizona State Prison Complex-

16 Lewis, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and

17 an Application to Proceed In Forma Pauperis (Doc. 2).  The Court will order Defendants

18 Trinity Food Service and Keefe Commissary Network to answer Count One of the

19 Complaint and will dismiss the remaining claims and Defendants without prejudice.

20 **I.**  **Application to Proceed In Forma Pauperis and Filing Fee**

21   The Court will grant Plaintiff's Application to Proceed In Forma Pauperis.  28

22 U.S.C. § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C.

23 § 1915(b)(1). The Court will not assess an initial partial filing fee.  *Id.*  The statutory filing

24 fee will be collected monthly in payments of 20% of the previous month's income credited

25 to Plaintiff's trust account each time the amount in the account exceeds $10.00.  28 U.S.C.

26 § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government

27 agency to collect and forward the fees according to the statutory formula.

28 . . . .

TERMPSREF

## II.	Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

### III.    Complaint

In his five-count Complaint, Plaintiff sues former Arizona Department of Corrections (ADC) Director Charles L. Ryan, current ADC Director David Shinn, Trinity Food Service ("Trinity"), Keefe Commissary Network ("Keefe"), Wardens Thompson and Kimble, Food Service Liaison Pam Smith, Complex Food Service Staff Director, Food Service Inspection Team, Complex Food Service Staff Unit Manager, Complex Registered Dietician, Religious and Volunteer Services Administrator, Food Service Contract Officer Representative, Division Director for Prison Operations, and Senior Chaplains Kingsland and Thomas.  Plaintiff asserts claims of denial of basic necessities, due process, equal protection, and his right to exercise his religion with respect to his diet, "misappropriation of funds/products," and fraud.  He seeks monetary and injunctive relief.

In **Count One**, Plaintiff alleges that he is on an "approved, forced, vegan religious diet."  ADC contracts with Defendant Trinity and its parent company, Defendant Keefe, to provide prisoner meals.  Trinity Food Service Staff Unit Managers at Rast and Buckley Units regularly and routinely do not make or refuse to make vegan meals according to the listed menu and dietary requirements.  Plaintiff is supposed to receive one cup of hummus daily, but he did not receive hummus from 2015 through November 23, 2019 or from May 26, 2020 through the present.  Instead, Plaintiff received ½ and ¼ cup portions of plain pinto beans, garbanzo beans, and black-eyed peas.  Poor nutrition is prevalent because Trinity staff refuse to provide fruit to Rast Max prisoners and refuse to make vegan meals according to the "actual menu," instead providing plain rice, pasta, boiled potatoes, and pinto beans for 2/3 of the vegan meals.  Plaintiff rarely, if ever, receives black beans, onions, mustard, spaghetti sauce, salsa, or vinaigrette dressings.  He is "required" to drink a fortified calcium beverage to get key vitamins and minerals, which is "hard on" his liver and kidneys, because the vitamins and minerals are "meant to be extracted by [the] digestive tract from food."  Plaintiff receives eight slices of white bread per day and one or two servings of vegetables per day, although the minimum for a healthy diet is eight servings of fruits and vegetables per day.  Plaintiff is given the fortified calcium beverage

1   because it is cheaper than healthy food.  He has never received the six "enhanced" holiday

2   meals per year that are provided by Department Order (DO) 912.3.1.1.  Plaintiff has never

3   received a veggie patty made of barley, as required by the menu, but rather receives only

4   rice.

5        The rice, beans, potatoes, and vegetables Plaintiff receives are routinely rancid or

6   fermented, which he has repeatedly brought to the attention of Correctional Officer (CO)

7   III Kozora and Defendant Trinity through Inmate Letters and by requesting that his meals

8   be sent back to the kitchen and corrected.  Trinity staff never solved the problem.  Many

9   of the required vitamins and minerals "cannot be found" in the vegan diet, and sugars and

10   fruit have been "arbitrarily taken."  Trinity no longer provides three sugar packets with

11   breakfast and fails to provide sugar substitutes, as required.  Plaintiff also fails to receive

12   the fortified calcium beverage daily and sometimes goes weeks without it.  The line and

13   floor COs II who pass out meals "take pity" on Plaintiff and offer him milk, peanut butter,

14   cereal, boiled eggs, and extra vegetables to make up for what he is "routinely missing" so

15   that he does not go hungry and have to argue with Trinity Food Service staff.

16        Plaintiff arrived at Rast Max on May 8, 2019, and weighed 178 pounds at that time.

17   By September 2019, Plaintiff weighed 157 pounds.  At 37 years old and six feet tall,

18   Plaintiff should weigh around 172 pounds.  He has gained back some weight only because

19   the COs make substitutions for what Plaintiff is "routinely missing."

20        Plaintiff completed an Informal Complaint, a Grievance, and a Grievance Appeal

21   between September 10, 2019 through October 18, 2019, "without result."  Plaintiff claims

22   that through CO III Clauson's response to Plaintiff's Grievance, in which Clauson wrote

23   that the issue would be "passed up the chain of command," Defendants Smith, Trinity Unit

24   Manager, Warden Thompson, Complex Registered Dietician, Complex Food Service Staff

25   Director, Food Service Contract Officer Representative, Food Service Inspection Team,

26   Department Religious and Volunteer Services Administrator, and Division Director for

27   Prisoner Operations were "made aware" of the issues with the vegan diet.  DO 912

28   "promises that all above listed parties/Defendants" must monitor, maintain, and provide

"visually appealing" and nutritionally adequate meals, not fortified beverage packets in place of food.  DO 912 also guarantees proper food portions.  Defendant Trinity gives smaller portions than listed in the menus because prisoners who work for Trinity routinely steal food, and Trinity makes up for that loss by shorting meals because prisoners on the vegan diet are "a small overall population" and "less able to congregate to cause trouble in standing up for [them]selves," and because Trinity gives bonuses to employees who save the company money by using less "material" each month, quarter, and year.

In **Count Two**, Plaintiff alleges that he is an "approved [and] recognized Wiccan vegetarian."  On March 30, 2007, he was approved for the ovo-lacto vegetarian diet, which allowed egg and milk products but no meat.  In 2008, however, ADC "forced" him to adopt a lacto-vegetarian diet against his will and punished him for accepting or purchasing egg products by "taking" his diet.  In 2012, Plaintiff was "forced" to go on a vegan diet "against [his] will [and] wishes."  The vegan diet does not allow Plaintiff to receive or purchase food items containing egg or milk products, such as cookies, pastries, cheese, chocolate, and ice cream; if he does, kitchen staff and the chaplain can revoke his vegan diet.  Plaintiff is "denied" these items in the vegan meals, and these "violations" are perpetuated by Defendant Trinity Food Services Employees, Keefe Commissary Network Unit Managers, Division Directors, Wardens, Religious Administrators, and Complex Wardens. Defendants Ryan and Shinn implemented the diet policy.

Plaintiff alleges that in 2018, Defendant Thomas "committed fraud" by having Plaintiff sign a blank diet sheet and then filling in Plaintiff's information, printing a vegan diet agreement, and sending Plaintiff a copy after the fact.  Plaintiff "had to refuse to lock down" to get Defendant Thomas to "admit the fraud" and allow Plaintiff to write a denial of agreement with the vegan diet in the comments section of the agreement.

Plaintiff alleges that his First Amendment right to freely practice his faith's dietary requirements has been violated because the vegan diet is "unpalatable."  He notes that Defendants Kingsland and Thomas are named as "injuring defendants."

. . . .

In **Count Three**, Plaintiff alleges that each time he renews his vegan diet, he is denied the opportunity to lobby to get back his original ovo-lacto vegetarian diet. Plaintiff is told to "get off diet" if he does not "like it." Plaintiff contends it is unreasonable to force a diet on him that he did not sign up for and asserts that this amounts to denial of due process "without hope of redress." Plaintiff claims that punishing him for not wishing to adhere to a diet he did not agree to is also a due process and equal protection violation. He asserts that there is no compelling security interest in depriving him of an ovo-lacto vegetarian diet, nor is there an "ongoing Trinity, Keefe or ADCO interest outside of money to continue this strict vegan diet." Plaintiff claims it is "obscenely cheap" compared to the cost of the ovo-lacto diet and is "obscenely lacking" in complex calories and proper nutrition, as set forth by FDA standards.

Plaintiff alleges that each Defendant participates in these violations. Plaintiff asserts that his faith has religious celebrations that specifically "utilize [and] glorify" milk, cheese, and egg yolks in fertility and harvest rituals. Plaintiff claims each Defendant either participated in decision-making, signed off, or enforced the policies/edicts.

In **Count Four**, Plaintiff alleges he has written numerous Inmate Letters, Informal Complaints, Grievances, and Grievance Appeals "over many years" regarding the inadequacies and denials of proper vegan meals, deficient meal portions, missing condiments, rotten and fermenting food, and deprivation of foods that a vegan diet calls for. Plaintiff asserts that "real" sugar jelly was taken, and peanut butter is now mixed with sugar free jelly, which often turns the peanut butter and jelly mix rancid, but it is served anyway. Plaintiff claims that the ratio of peanut butter to jelly is 2/3 peanut butter to 1/3 jelly, and it is usually "half-n-half or reversed ratioed." Plaintiff asserts that this is because prisoners who work for Trinity steal food and the shortage is balanced by taking items from vegan and other diets. Plaintiff alleges he routinely does not receive seasoning or salt in his diet, although the menu ingredients call for them.

Plaintiff alleges that because he has spent years complaining of these deficiencies "without positive results," it would be "difficult to believe" that these issues are not

"endemic all of the way up chain-of-command responsibility." Plaintiff claims Defendants are supposed to approve and "sign off" on all vegan diet modifications, and he speculates that these issues have not been solved due to "corruption."

In **Count Five**, Plaintiff alleges that because he has spent years attempting to get ADC and Defendant Trinity to correct the vegan diet issues to no avail, and "logic dictates that the problems are endemic," then "that can only mean a continued misappropriation of funds/products being used other than allocated." Plaintiff further claims that "logic also dictates" that the only reason a review of purchasing receipts and distributions for the vegan diet has not been conducted is that there is an "active push" to overlook and/or "keep it from becoming common knowledge." Plaintiff asserts that all named Defendants "have a portion of shared responsibility" and ultimately approve and sign off on the work of those "beneath them."

## IV.    Failure to State a Claim

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

### A.    Official Capacity versus Individual Capacity

A claim against an individual in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

Plaintiff cannot maintain a lawsuit for damages against ADC employees or specific Defendants in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the

1    suit because they assume the identity of the government that employs them."); *see also*

2    *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not

3    a 'person' for purposes of section 1983.  Likewise[,] 'arms of the State' such as the Arizona

4    Department of Corrections are not 'persons' under section 1983.") (citation omitted).

5    Thus, Plaintiff cannot obtain money damages from Defendant Ryan.         Plaintiff may

6    maintain a lawsuit against ADC employees in their official capacity for *prospective*

7    declaratory and injunctive relief because under the doctrine set forth in *Ex parte Young*,

8    209 U.S. 123 (1908), the Eleventh Amendment "does not . . . bar actions for prospective

9    declaratory or injunctive relief against state officers in their official capacities for their

10   alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d

11   1128, 1134 (9th Cir. 2012).  But not all declaratory and injunctive relief is prospective.

12   The exception is intended to prevent continuing violations of federal law and "does not

13   permit judgments against state officers declaring that they violated federal law in the past."

14   *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also*

15   *Hindes v. FDIC*, 137 F.3d 148, 166 (3d Cir. 1998) ("The type of prospective relief

16   permitted under *Young* is relief intended to prevent a continuing violation of federal law.").

17   Because Defendant Ryan is no longer ADC Director, the Court cannot grant

18   injunctive relief against this Defendant.  The Court will therefore dismiss Defendant Ryan.

19   Insofar as Plaintiff is seeking prospective injunctive relief against Defendant Shinn, he has

20   failed to state an official capacity claim.  "[I]n an official-capacity suit the entity's 'policy

21   or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*,

22   473 U.S. 159, 166 (1985); *see also Los Angeles County v. Humphries*, 562 U.S. 29, 39

23   (2010) (the "'policy or custom' requirement [in *Monell*] applies in § 1983 cases irrespective

24   of whether the relief sought is monetary or prospective.").  A plaintiff must allege, as a

25   matter of law, that the policy or custom caused him to suffer constitutional injury. *Sadoski*

26   *v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006).  Plaintiff does not allege that any of his

27   injuries were the result of a specific ADC policy, procedure, or custom.  Accordingly, the

28   Court will dismiss Defendant Shinn.

**B.**    **Defendants Smith, Kingsland, Kimble, Thompson, Trinity Unit Manager, Complex Registered Dietician, Complex Food Service Staff Director, Food Service Contract Officer Representative, Food Service Inspection Team, Department Religious and Volunteer Services Administrator, and Division Director for Prison Operations**

Plaintiff's allegations against Defendants Smith, Kingsland, Kimble, Thompson, Trinity Unit Manager, Complex Registered Dietician, Complex Food Service Staff Director, Food Service Contract Office Representative, Food Service Inspection Team, Department Religious and Volunteer Services Administrator, and Division Director for Prison Operations are simply vague and conclusory allegations against this group of Defendants, without any factual specificity as to what any particular Defendant did or failed to do.  Such allegations are insufficient.  *See Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of *Bivens* complaint that referred to all defendants "generally and categorically" because the plaintiff had failed to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").    Thus, the Court will dismiss without prejudice Defendants Smith, Kingsland, Kimble, Thompson, Trinity Unit Manager, Complex Registered Dietician, Complex Food Service Staff Director, Food Service Contract Office Representative, Food Service Inspection Team, Department Religious and Volunteer Services Administrator, and Division Director for Prison Operations.

**C.**    **Diet Claims**

**1.**    **Eighth Amendment**

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test.  "First, the alleged constitutional deprivation must be, objectively,

1    sufficiently serious" such that the "official's act or omission must result in the denial of the

2    minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. 825, 834

3    (1994) (internal quotations omitted).  Second, the prison official must have a "sufficiently

4    culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or

5    safety."  *Id.* (internal quotations omitted).  Deliberate indifference is a higher standard than

6    negligence or lack of ordinary due care for the prisoner's safety.  *Id.* at 835.  In defining

7    "deliberate indifference" in this context, the Supreme Court has imposed a subjective test:

8    "the official must both be aware of facts from which the inference could be drawn that a

9    substantial risk of serious harm exists, *and* he must also draw the inference."  *Id.* at 837

10   (emphasis added).

11        The Eighth Amendment requires "only that prisoners receive food that is adequate

12   to maintain health; it need not be tasty or aesthetically pleasing.  'The fact that the food

13   occasionally contains foreign objects or sometimes is served cold, while unpleasant, does

14   not amount to a constitutional deprivation.'"  *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th

15   Cir. 1993) (citation omitted) (quoting *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th

16   Cir. 1985)).  However, a prisoner may state a claim where he alleges that he is served meals

17   with insufficient calories for long periods of time.  *Id*.

18        Plaintiff alleges that his meals are nutritionally inadequate and do not comply with

19   ADC Department Orders.  To the extent Plaintiff alleges that his meals do not comply with

20   ADC policy, he fails to state a claim.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th

21   Cir. 2009) (finding defendants entitled to qualified immunity because "[violations of] state

22   departmental regulations do not establish a federal *constitutional* violation"); *see also Case

23   v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) ("[T]here is no § 1983

24   liability for violating prison policy.  [Plaintiff] must prove that [the official] violated his

25   constitutional right. . . .") (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).

26        Moreover, Plaintiff has not alleged facts sufficient to support a conclusion that any

27   individual Defendant was aware of and disregarded an excessive risk to Plaintiff's health.

28   Plaintiff claims he has submitted numerous Inmate Letters, Informal Complaints,

**TERMPSREF**

Grievances, and Grievance Appeals, but he does not identify a single such document, when or to whom it was addressed, the information he included, the response he received, if any, and how the response or lack of response amounted to deliberate indifference.  Although Plaintiff alleges that he lost approximately 20 pounds in four months in 2019, he does not state whether, when, or whom he notified about his weight loss.  Absent additional information, Plaintiff has not stated an Eighth Amendment conditions-of-confinement claim against the individual Defendants.

### 2. Due Process

Plaintiff asserts that Defendants' conduct described in the Complaint violated the Due Process Clause of the Fourteenth Amendment.  The Court will dismiss as duplicative Plaintiff's due process claims with respect to the nutritional adequacy of the vegan diet.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (Eighth Amendment, not Fourteenth Amendment, protects convicted prisoners from unconstitutional conditions of confinement).

### D. Religious Exercise

Prisoners retain the First Amendment right directing that no law shall prohibit the free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Henderson v. Terhune*, 379 F.3d 709 (9th Cir. 2004).  To state a First Amendment, free-exercise-of-religion claim, a plaintiff must allege that a defendant burdened the practice of plaintiff's religion by preventing him from engaging in a sincerely held religious belief and that the defendant did so without any justification reasonably related to legitimate penological interests.  *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008).

Although Plaintiff notes that his religion incorporates milk, cheese, and egg yolks in fertility and harvest rituals, Plaintiff has not alleged that he was unable to perform these rituals in another way, that his consumption of a vegan diet otherwise burdened his religious practice, or that any Defendant forced Plaintiff to consume a vegan diet without any justification reasonably related to legitimate penological interests.  Plaintiff also does not explain how Defendant Thomas's completion of the vegan diet agreement without

1    Plaintiff's knowledge burdened Plaintiff's religious practice.  Thus, Plaintiff has failed to

2    state a First Amendment religious exercise claim in the Complaint.

3              **E.    Count Three**

4              Plaintiff designates Count Three as a Fourteenth Amendment claim for denial of

5    due process "to lobby to keep" his ovo-lacto diet and the "equal protection standard" with

6    respect to the exercise of his religion.  As discussed above, Plaintiff's due process claims

7    are duplicative of his First Amendment claim.  To the extent that Plaintiff intends to assert

8    an equal protection claim, he fails to state a claim.  Generally, "[t]o state a claim . . . for a

9    violation of the Equal Protection Clause . . . [,] a plaintiff must show that the defendants

10   acted with an intent or purpose to discriminate against the plaintiff based upon membership

11   in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Even if

12   Plaintiff is a member of a protected class because of his religion, he has not alleged any

13   facts to support a conclusion that any named Defendant acted with an intent or purpose to

14   discriminate against him based on his religion.

15             The United States Supreme Court has also recognized "successful equal protection

16   claims brought by a 'class of one,' where the plaintiff alleges that [he] has been

17   intentionally treated differently from others similarly situated and that there is no rational

18   basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564

19   (2000); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th

20   Cir. 2002).  Even under this standard, Plaintiff has failed to state a claim.  Plaintiff has

21   failed to allege that he was treated differently than other similarly situated individuals and

22   that there was no rational basis for treating him differently.  Thus, Plaintiff has failed to

23   state an equal protection claim in the Complaint.

24             **F.    Counts Four and Five**

25             It is unclear what claim Plaintiff intends to assert in Counts Four and Five.  Plaintiff

26   refers to due process, but as discussed above, his due process claims are duplicative of his

27   Eighth Amendment claims.  Plaintiff also refers to 31 U.S.C. § 5330, which concerns

28   registration of money transmitting businesses and provides for civil penalties for failure to

comply with registration requirements.  This statute does not provide a private cause of action.  And Plaintiff refers to a decision from the Arizona Court of Appeals[1] and "fraud," but section 1983 does not provide a cause of action for violations of state law or state constitutional rights, *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981), and state statutory requirements do not create a duty under the Due Process Clause, *see DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 201-02 (1989).  Thus, the Court will dismiss Counts Four and Five.

**V.     Claims for Which an Answer Will be Required**

Liberally    construed,    Plaintiff    has    stated    an    Eighth    Amendment    deliberate indifference claim in Count One against Defendants Trinity and Keefe based on their alleged policy of shorting vegan meals to make up for theft of food and to save costs.  The Court will require Defendants Trinity and Keefe to answer the Complaint.

**VI.    Warnings**

**A.     Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis.  Failure to comply may result in dismissal of this action.

**B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.     Copies**

Because Plaintiff is currently confined in an Arizona Department of Corrections unit

---

[1] Plaintiff appears to be referring to *State v. Lefevre*, 972 P.2d 1021 (Ariz. Ct. App. 1998), a criminal case involving money laundering.

subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3)     Counts Two, Three, Four, and Five are **dismissed** without prejudice.

(4)     Defendants Ryan, Shinn, Thompson, Kimble, Smith, Complex Food Service Staff Director, Food Service Inspection Team, Complex Food Service Staff Unit Manager, Complex Registered Dietician, Religious and Volunteer Services Administrator, Food

Service Contract Officer Representative, Division Director for Prison Operations, Kingsland, and Thomas are **dismissed** without prejudice.

(5)     Defendants Trinity and Keefe must answer Count One.

(6)     The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Trinity and Keefe.

(7)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9)     The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(10)    The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

(11)    A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(12)    The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

TERMPSREF

(a)      personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(h)(1) of the Federal Rules of Civil Procedure; and

(b)      within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13)    Defendants Trinity and Keefe must answer Count One of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14)    Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(15)    This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 9th day of July, 2020.

Douglas L. Rayes
United States District Judge